IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ADAM LAMAR ROBINSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:08cv168-MEF |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion by federal inmate Adam Lamar Robinson ("Robinson") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

**I. INTRODUCTION**

On July 25, 2007, in accordance with a plea agreement, Robinson pled guilty to both counts of a two-count indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 1), and possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d) & 5871 (Count 2).[1] On October 30, 2007, the

---

[1] Count 1 of the indictment alleged that Robinson, having been previously convicted of several felony offenses, did knowingly possess in and affecting commerce firearms, to-wit: (1) a Norinco, model Mak-90, 7.62mm rifle; (2) a Mossberg, 28- inch Accu-Choke 12 gauge shotgun; (3) a Lorcin, model L-380, .380 caliber pistol; (4) a Remington, model 510, .22 caliber rifle; (5) a Marlin, model 110M, .22 caliber rifle; (6) an Ithaca, 12 gauge shotgun; (7) a Mossberg, model 500 AG, 12 gauge shotgun; (8) a Marlin, model 60W, .22 caliber rifle; (9) a Smith and Wesson, model 442, .38 caliber revolver; (10) an SWD Derringer, model DD45, .45 caliber firearm; and (11) a Weihrauch-Sport silencer- Nur fur "F."
    Count 2 of the indictment alleged that Robinson and his wife, Karen Kilgo Robinson, aided and abetted each other by possessing firearms, firearm silencers, and destructive devices, to-wit: (1)
(continued...)

district court sentenced Robinson to 64 months in prison. Robinson did not appeal his convictions or sentence. On March 6, 2008, Robinson, acting *pro se*, filed a § 2255 motion (Doc. No. 1)[2] asserting the following claims:

1. The warrant for the search of his residence did not identify the place to be searched or the property to be seized with sufficient particularity.

2. His counsel rendered ineffective assistance by failing to argue that the search warrant for his residence did not identify the place to be searched or the property to be seized with sufficient particularity.

3. He was not guilty of the offense charged in Count 2 of the indictment because he never possessed the firearm silencer listed in that count.

---

[1](...continued)
a Weihrauch-Sport silencer- Nur fur "F"; (2) a metal cylindrical device approximately 12 inches x 1 3/4 inches; (3) a metal cylindrical device approximately 6 1/4 inches x 2 inches; (4) a metal cylindrical device approximately 4 ½ inches x 1 ½ inches, all designed as a firearm muffler or silencer; (5) a 1 ½ inch nominal diameter metal pipe measuring 6 inches in length containing a mixture of Hodgdon brand Pyrodex P and disc-shaped double base smokeless powder; (6) a 2-inch nominal diameter metal pipe measuring 6 inches in length containing 148 grams of zinc plated BBs and approximately 189 grams of 3/8 inch steel hunting shot and a mixture of Hodgdon brand Pyrodex P and disc-shaped double base smokeless powder; (7) a 2-inch plastic shell containing a primer and twelve 3/8 diameter steel hunting shot pellets and a mixture of Hodgdon brand Pyrodex P and discshaped double base smokeless powder; and (8) a 2-inch plastic shell containing a primer and 100 grams of zinc-plated BBs and a mixture of Hodgdon brand Pyrodex P and disc-shaped double base smokeless powder, all designed as a destructive device, not registered in the National Firearms Registration and Transfer Record. As part of the plea agreement, the government agreed to move to dismiss all pending federal charges against Robinson's wife at Robinson's sentencing.

[2]Although the § 2255 motion was date-stamped "received" in this court on March 11, 2008, it was signed by Robinson on March 6, 2008. Under the "mailbox rule," a *pro se* inmate's petition is deemed filed the date it is delivered to prison officials for mailing, presumptively the date it is signed by the petitioner. *Houston v. Lack,* 487 U.S. 266, 271-72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999).

(*§ 2255 Motion* - Doc. No. 1 & *Affidavit* - Doc. No. 1-2.)

Robinson later amended his § 2255 motion to assert additional claims that his counsel was ineffective for (a) failing to adequately consult with him prior to the suppression hearing, failing to apprise him of his pretrial preparation, and failing to forward any discovery materials to him; (b) failing to interview witnesses or his family members or to conduct any other form of investigation; and (c) failing to conduct an adequate review of the documentary evidence in the case.³ (Doc. No. 19.)

The United States answers that Robinson's claims are either procedurally barred or without merit. (Doc. Nos. 4 & 27.) Robinson was allowed an opportunity to respond to the government's answer and did so. (Doc. Nos. 15 & 29.) After due consideration of Robinson's § 2255 motion, all supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

## II. DISCUSSION

### A. Substantive Claims

Robinson presents the following two substantive claims in his § 2255 motion: (1) the warrant for the search of his residence did not identify the place to be searched or the

---

³The claims in Robinson's pleadings overlap in places, are repetitive, and are not always presented in a clear and logical fashion. For organizational and analytical purposes, this court has recast some of Robinson's claims in a more appropriate presentation.

property to be seized with sufficient particularity; and (2) he was not guilty of the offense charged in Count 2 of the indictment because he never possessed the firearm silencer listed in that count. (*See § 2255 Motion* - Doc. No. 1 at p. 6 & *Affidavit* - Doc. No. 1-2 at p. 4.)

Because, he did not appeal his convictions or sentence, Robinson obviously did not raise these substantive claims in a direct appeal. Ordinarily, if an available claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding unless a petitioner can show both cause for the failure to raise the claim on direct appeal and actual prejudice arising from that failure. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989). Robinson appears to assert ineffective assistance of counsel as "cause" excusing his failure to raise his substantive claims prior to filing his § 2255 motion. (Doc. No. 15 at p. 1.) In addition, he also asserts an independent claim of ineffective assistance of counsel based on his attorney's failure to challenge the alleged deficiencies of the search warrant in the motion to suppress litigated in the trial court. (*See § 2255 Motion* - Doc. No. 1 at p. 5 & *Affidavit* - Doc. No. 1-2.) Accordingly, this court will address Robinson's underlying substantive claims in the context of his related allegations of ineffective assistance of counsel. These and all of Robinson's allegations of ineffective assistance of counsel are reviewed below in this Recommendation.

**B.     Ineffective Assistance of Counsel**

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair

trial. To succeed on a claim of ineffective assistance of counsel, a petitioner must satisfy both prongs of the test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The *performance* prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id*. at 687-89. The *prejudice* prong requires a petitioner to demonstrate that seriously deficient performance of his counsel prejudiced the defense. *Id*. at 687.

Under the performance component of the *Strickland* inquiry, a petitioner must establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687). In any ineffective assistance analysis, scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000); *see Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992). The court will "avoid second-guessing counsel's performance:

5

It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

Under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697 (A court need not "address both components of the inquiry

if the [movant] makes an insufficient showing on one."); *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("[I]f a defendant cannot satisfy the prejudice prong, the court need not address the performance prong.").

### 1. *Particularity of Search Warrant*

Robinson contends that the warrant for the search of his residence did not identify the place to be searched or the property to be seized with sufficient particularity and that his counsel, attorney Thomas M. Goggans,[4] was ineffective for failing to assert this argument in the motion to suppress the government's evidence. (*See § 2255 Motion* - Doc. No. 1 at pp. 5-6 & *Affidavit* - Doc. No. 1-2.)

The Fourth Amendment prohibits the issuance of a search warrant except on "'particularly describing the place to be searched, and the persons or things to be seized.'" U.S. Const. Amend. IV; *see, e.g., United States v. Wuagneaux*, 683 F.2d 1343, 1348 (11th Cir. 1982). In evaluating the description of the place to be searched, "it is enough if the description is such that the officer with a search warrant can, with reasonable effort[,] ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925).

---

[4] All of Robinson's allegations of ineffective assistance of counsel are levied against attorney Goggans, who represented Robinson through the early phase of the case, including litigation of a motion to suppress the government's evidence. On May 31, 2007, Goggans filed a motion to withdraw as counsel for Robinson; that motion was granted on June 8, 2007.
  Following Goggans's withdrawal from the case, attorney Evertt M. Urech filed a notice of appearance as counsel for Robinson on June 12, 2007. On July 23, 2007, Robinson filed a notice of his intent to change plea, and on July 25, 2007, Robinson, represented by Urech, entered his guilty plea. Urech also represented Robinson at sentencing. Robinson does not present any claims concerning the representation provided by Urech.

7

Further, "[a] description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Wuagneaux*, 683 F.2d at 1348; *see, e.g., United States v. Betancourt*, 734 F.2d 750, 754-55 (11th Cir. 1982). "The manifest purpose of this particularity requirement was to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). This does not, however, require the warrant's description of the place to be searched to meet technical requirements. Rather, "[t]he warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." *United States v. Burke*, 784 F.2d 1090, 1093 (11th Cir. 1986); *see also United States v. Ellis*, 971 F.2d 701, 703 (11th Cir. 1992).

In this case, Attachment A of the search warrant specifically described the place to be searched as follows:

*ATTACHMENT A*

DESCRIPTION OF THINGS TO BE SEARCHED

*The Premises*

The Premises of Adam Lamar Robinson
Address: 1708 Formosa Court
including all outbuildings and appurtenances thereto
in the City of Deatsville
in the County of Autauga
in the Middle District of Alabama
....

*Premises' Physical Description*

Stories - 1

>Construction Type – Brick
>Color - Red with green shutters
>Garage/Carport – Attached carport on right side of residence. Shed in the rear yard of the residence, tan in color

(Doc. No. 27 - Gov. Exh. B at p. 7.).

The items to be seized were described with particularity in Attachment B of the search warrant, as follows:

*ATTACHMENT B*

DESCRIPTION OF EVIDENCE TO BE SEARCHED FOR AND SEIZED

*FIREARMS*

One Weihrauch Silencer, no serial number

Any firearms and/or ammunition as defined in Title 18, Chapter 44, Section 921.

*DOCUMENTS*

All documents and/or data relating to the possession, transfer or purchase of firearms, to include computer equipment and or phone records.

*INDICIA OF CONTROL OF THE PREMISES*

Records that establish the persons who have control, possession, custody or dominion over the property and vehicles searched and from which evidence seized, such as: personal mail, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, mortgage bills, and vehicle registration information or ownership warranties, receipts for vehicle parts and repairs and telephone answering machine introductions and fingerprints.

(Doc. No. 27 - Gov. Exh. B at p. 8.).

Here, the residence to be searched (Robinson's) was identified by its exact address and by a physical description of the residence itself. Such description was sufficiently particular so that the officers with the search warrant could, with reasonable effort, ascertain and identify the place intended. Further, the items to be seized were also described with sufficient particularity to enable the searchers to reasonably ascertain and identify the things they were authorized to be seized. Despite Robinson's suggestion to the contrary, the descriptions in the search warrant were more than sufficient to meet Fourth Amendment requirements. As such, there was no basis for Robinson's counsel to challenge the search warrant on the grounds asserted by Robinson.[5] Counsel cannot be ineffective for failing to raise or pursue a meritless issue. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). Therefore, Robinson is not entitled to any relief based on this claim.

### 2. *Guilt as to Count 2 of the Indictment*

Robinson maintains that he was not guilty of the offense charged in Count 2 of the indictment because he never actually possessed the firearm silencer listed in that count. (*See Affidavit* - Doc. No. 1-2 at p. 6; Doc. No. 15 at p. 6.) He then converts this otherwise

---

[5]In response to this and other allegations of ineffective assistance of counsel presented in Robinson's § 2255 motion, attorney Goggans filed an affidavit explaining, in pertinent part, that while he did file a suppression motion challenging, among other things, the search of Robinson's residence, he "did not assert all of the grounds urged by Mr. Robinson inasmuch as they were inapposite, meritless or frivolous." (Doc. No. 3 at p. 2.)

10

procedurally defaulted claim into an allegation of ineffective of assistance of counsel, asserting that his counsel was ineffective for failing to raise such a claim. (*See* Doc. No. 15 at pp. 1-2.)

In contending that he was not guilty under Count 2, Robinson asserts that only his wife – and not he – was ever in actual possession of the firearm silencer that was delivered to his residence.[6] Robinson's argument is not well taken. First, Count 2 of the

---

[6]Robinson's Presentence Investigation Report ("PSI") summarizes the offense conduct as follows:

On June 1, 2006, U.S. Customs and Border Protection in Chicago, Illinois, intercepted a parcel coming from Maulburg, Germany. The parcel was destined for Adam Robinson at 1708 Formosa Court, Deatsville, Alabama 36022. Upon further investigation, the parcel was determined to be a Weihrauch silencer for a firearm. On June 2, 2006, the parcel was transferred to Special Agent Timothy Fitzpatrick with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). Agent Fitzpatrick then determined that the silencer had no serial number, Robinson had not registered the silencer and any other firearm with the National Firearms Registration and Transfer Record, and that Adam Robinson was convicted of several felony offenses that were previously described in the indictment and are outlined in the defendant's criminal history. Based on this information, Agent Fitzpatrick obtained a search warrant for Robinson's residence and scheduled a controlled delivery of the mail parcel containing the silencer to Robinson's residence.

On June 15, 2006, Agent Fitzpatrick and other agents with ATF, United States Postal Inspection Service, and Immigration and Customs Enforcement initiated a controlled delivery by placing the parcel in the mailbox of 1708 Formosa Court, Deatsville, Alabama 36022. A short time later, Karen Kilgo Robinson exited the residence, retrieved the parcel, and returned to the residence. Agent Fitzpatrick and others then approached the residence and made contact with Karen Robinson, the defendant's wife. Karen Robinson advised her husband was at work and her son, Chad, was visiting his grandmother in Decatur, Alabama. Agent Fitzpatrick then advised her of her rights and she agreed to be interviewed. When asked about the parcel containing the silencer, Karen Robinson stated she was not familiar with the silencer, that she did not order it, and was unaware if her husband ordered it. While being questioned about firearms located at their residence, Karen Robinson stated she

(continued...)

indictment alleged that Robinson and his wife aided and abetted each other in the possession of the silencer (and other firearms and destructive devices). (*See Indictment* at p. 2.) Robinson could therefore have been guilty of the substantive offense charged in Count 2 even if was never in personal possession of the silencer. *See United States v. Perez*, 922 F.2d 782, 785 (11th Cir. 19910 ("Aiding and abetting encompasses activities intended to ensure the success of the underlying substantive crime...."). Moreover, as part of the plea agreement, Robinson admitted that he knowingly possessed the silencer as charged in Count 2. (*See Plea Agreement*, Doc. No. 27-11, Gov. Exh. J, at pp. 6-7.) In addition, at the guilty plea hearing, Robinson acknowledged under oath that he knowingly possessed the silencer

---

[6](...continued)
owned a pistol that she had purchased from a pawn shop and it was located in the night stand by her bed. She further advised there was a shotgun in the office. When the agents were recovering the firearms, Karen Robinson, was unable identify them and stated that her father passed away in 2000 and she acquired some of the firearms from him. When asked about the contents in the shed located near the residence, Karen Robinson claimed there were no firearms or explosives in it. When agents located two suspected pipe bombs in a file drawer in the office, Karen Robinson, advised they were harmless because she knew what was in them and there was nothing that could harm the agents or her.

In addition to the two suspected pipe bombs, agents recovered two additional homemade explosive type devices and explosive products, ten firearms, one flare launcher, one firearm silencer (mail parcel), three suspected firearm silencers, over three thousand rounds of ammunition, two computers and numerous documents.

Agent Mattox with Alabama Bureau of Investigation assisted Agent Fitzpatrick with collecting all suspected explosives and later performed Render Safe Procedures and collected samples for forensic testing on July 21, 2006. Lab results confirmed two devices were pipe bombs and two were explosive device s that were converted from flare shells that could be shot from the flare gun. In addition, the defendant's computer was later searched and revealed that the defendant had purchased Tannerite Binary Explosive Powder over the internet and had used the internet to further his interest in firearms and other related explosive items. (*See* PSI at pp. 4-5, ¶¶ 4-7.)

and other firearms and destructive devices described in Count 2, and that he was guilty of the charged offense.[7] (*See Change of Plea Hearing*, Doc. No. 27-12, at pp. 14-15.)

The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988). "There is a strong presumption that the statements made during the colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Robinson's protestations of innocence are refuted by the record, including the record of his own sworn statement. Because Robinson fails to establish the merit of his underlying substantive claim, he likewise cannot show that his counsel rendered ineffective assistance by failing to raise such a claim. Therefore, he is not entitled to any relief based on this claim.

In a variant of this claim, Robinson also asserts that he is "actually innocent" – presumably of both counts to which he pled guilty – and suggests that it was his wife (and not he) who had possession of the silencer and all other firearms and destructive devices described in the indictment. (*See* Doc. No. 15 at pp. 7-9; Doc. No. 29 at pp. 4-5.) To establish actual innocence, a petitioner must demonstrate that, in light of all the evidence, "'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998), quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In this regard, "actual innocence" has been defined as "factual innocence, not mere

---

[7] The court also notes that Count 2 of the indictment charged Robinson with possessing various other unregistered firearms and destructive devices in addition to the silencer.

legal insufficiency." *Bousley*, 523 U.S. at 623. The Supreme Court in *Schlup* observed:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires [a movant] to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 324.

As indicated above, Robinson acknowledged under oath in open court that he knowingly possessed the silencer and the other firearms and destructive devices described in Count 2 of the indictment, and that he was guilty of the charged offense. He did the same with regard to all the firearms described in Count 1 of the indictment. Again, Robinson's protestations of innocence are refuted by the record, including his own sworn statements.[8] Robinson has presented no facts, other than his own conclusory assertions and argument, to support his claim of actual innocence. Mere conclusory assertions are insufficient to support a claim of actual innocence. Without any new evidence to substantiate Robinson's claim of actual innocence, from a factual standpoint, the court finds that he has failed to meet his burden of showing that he is actually innocent, i.e., that "no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 327.

---

[8]What the court is faced with in this case is a petitioner who pled guilty to the facts necessary to establish his guilt and acknowledged his guilt in a knowing and voluntary guilty plea, but then later complains that the government failed to present sufficient evidence of his guilt. It indeed seems odd, moreover, that Robinson would now seek to suggest that his wife (and not he) possessed the silencer and the other firearms and destructive devices described in the indictment when a part of his plea agreement was that the government would to move to dismiss all pending federal charges against his wife at his sentencing.

### 3. *Failure to Consult Prior to Suppression Hearing, to Apprise of Pretrial Preparation, and to Forward Discovery Materials*

Robinson also contends that his counsel, attorney Goggans, was ineffective because he failed to consult with him prior to the suppression hearing, did not keep him apprised of his pretrial preparation, and did not forward discovery materials to him. (*See* Doc. No. 19-2 at pp. 3-4.)

In an affidavit addressing Robinson's allegations of ineffective assistance, Mr. Goggans avers, in pertinent part, as follows:

> Mr. Robinson and I did discuss negotiating a settlement in his case. Unfortunately, Adam Robinson began the process with an unrealistic assessment of his bargaining positions. His notion was that he was in a position to assert what was tantamount to a list of demands. It took some time to disabuse him of that notion. Once I was able to do that, I arranged a proffer session with the government. After the proffer session, due to busy trial schedules in my office and the prosecutor's office, it took some time for me to connect with the prosecutor to talk about a settlement. At that point, the prosecutor was still waiting to hear back from one of the involved government investigators as to his assessment of the proffer session. Before reaching that point and getting down to the details of negotiating a plea agreement, Mr. Robinson terminated my services.
>
> Mr. Robinson has complained that I did not visit him at the jail as often as he would have liked. I did not keep up with the number of times I went to the jail to consult with Mr. Robinson. Nevertheless, I consulted with Mr. Robinson as often as was necessary to prepare his case. I kept Mr. Robinson apprised of all developments in his case in face-to-face meetings and in written correspondence.
>
> Mr. Robinson has also complained that I did not provide him with copies of documents or go over documents with him. I reviewed all of the discovery materials in this case. Generally, I do not like to leave any sensitive documents in jails because they seem to have a way of finding their way into the wrong hands – hands of persons ending up as witnesses against clients.

15

> In any event, as is referenced in some of the correspondence attached, I did go over all of the case documents with Mr. Robinson in person.

(Doc. No. 26 at p. 3.)

Weighing counsel's averments in his affidavit against Robinson's conclusory allegations in his § 2255 motion, and considering that Robinson has made absolutely no showing that he was prejudiced by counsel's alleged failures in this regard, this court concludes that Robinson is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 4. *Failure to Interview Witnesses or Family Members or to Conduct Other Investigation*

Robinson says that his counsel, Mr. Goggans, rendered ineffective assistance by failing to interview witnesses and his family members or to conduct any other form of investigation in the case. (*See* Doc. No. 19-2 at p. 3.)

Addressing this allegation, Goggans avers, in pertinent part:

> Adam Robinson has also complained that I did not talk with his wife and others in the investigation of this case. There was a preliminary hearing in this case. Witnesses testified at that hearing. I was able to obtain relevant information at that hearing. Also, copies of reports were provided in discovery. I also went to the ATF office in Montgomery to look at the physical evidence. ATF agents were there and answered whatever questions I had. Mr. Robinson also complains that I did not talk enough with his wife. Mr. Robinson intimates that his wife would have provided information that the firearms and other involved items in this case were hers and possess by her not him. I would think that his statements in his guilty plea colloquy would belie that assertion. In any event, his wife was represented by other counsel. I did confer with her counsel during the course of my presentation and was aware of her position or positions in the matter and her counsel's position in the matter.

16

(Doc. No. 19-2 at pp. 3-4.)

Mr. Goggans's affidavit indicates that he obtained relevant information from the testimony of witnesses who testified at the preliminary hearing in the case, through discussions with ATF agents, and by examining reports and the physical evidence seized in the case. The investigation that counsel undertook in this regard was more than sufficient. Again, Robinson fails to show that his counsel's performance was deficient, or that he was prejudiced by counsel's performance. Therefore, Robinson is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 5.    *Failure to Conduct Adequate Review of Documentary Evidence*

Robinson contends that attorney Goggans "failed to conduct an adequate review of the government's documentary evidence, including critical statements given to prosecutors by the petitioner's wife." (*See* Doc. No. 19-2 at p. 4.)

As indicated above, Mr. Goggans filed an affidavit indicating that he fully reviewed the documentary evidence in the case and that he was well aware of the position (or positions) Robinson's wife had taken with regard to possession and ownership of the firearms. As Mr. Goggans also notes in his affidavit filed with this court, Robinson's statements in his guilty plea colloquy contradict his current assertions regarding possession and ownership of the firearms. Finally, as counsel also states regarding his representation of Robinson as it might relate to his current claims, "the possession issue seems to be more of a trial issue, and I withdrew from representation before the final decision was made on

17

taking the case to trial or entering a plea." (Doc. No. 26 at p. 4.) Once again, Robinson wholly fails to show how he was prejudiced by attorney Goggans's performance in this regard.[9] Consequently, he is not entitled to any relief based on this claim.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Robinson be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before February 25, 2010. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of*

---

[9] It is curious that Robinson would focus all his claims of ineffective assistance of counsel on the actions of Mr. Goggans when he was represented by different counsel for some time after Goggans withdrew from representation and before filing notice of intent to change his plea and entering his guilty plea. While Goggans was obviously Robinson's attorney during the early phase of the case through litigation of the suppression issues, he was not Robinson's attorney when Robinson decided to plead guilty to the charges against him.

*Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 11th day of February, 2010.

/s/Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE